## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JUANASHE C.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action No. ADC-18-2909** |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| **ADMINISTRATION,**[1] | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

On September 19, 2018, Juanashe C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 19, 20), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 20) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On July 31, 2015, Plaintiff filed a Title II application for DIB, alleging disability beginning on February 28, 2014. Plaintiff also filed a Title XVI application for SSI on July 31, 2015, alleging

---

[1] Currently, Andrew Saul serves as the Commissioner of the Social Security Administration.

disability beginning on February 28, 2014. Her claims were denied initially and upon reconsideration on May 17, 2016 and November 29, 2016, respectively. Subsequently, on December 14, 2016, Plaintiff filed a written request for a hearing and, on October 11, 2017, an Administrative Law Judge ("ALJ") presided over a video hearing. On November 14, 2017, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], from February 28, 2014, through the date of this decision." ECF No. 16-3 at 39. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on July 24, 2018, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On September 19, 2018, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On February 26, 2019, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on April 26, 2019. Plaintiff did not respond to Defendant's motion and the time to do so has since passed.[2] This matter is now fully briefed, and the Court has reviewed both parties' motions.

**STANDARD OF REVIEW**

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99

---

[2] On May 31, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration

4

requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R.

§ 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1),

404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

In the instant matter, with regard to Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through March 31, 2019. ECF No. 16-3 at 28. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since February 28, 2014, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "mild bilateral neural foraminal narrowing of the L5-S1 vertebrae without significant canal compromise or nerve impingement, mild facet arthropathy, generalized anxiety disorder ('GAD'), depressive disorder, and a history of opioid abuse." *Id.* at 29. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. She could occasionally balance and stoop but never kneel, crouch, or crawl. She could perform simple, routine, repetitive tasks with only occasional interaction with co-workers and supervisors and no interaction with the public.

*Id.* at 31. The ALJ then determined that Plaintiff had past relevant work as a pharmacy technician, certified medication technician, and caregiver, but that she is unable to perform such work. *Id.* at 37. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 38. Thus, the ALJ concluded that Plaintiff "ha[d] not been

under a disability, as defined in the [Act], from February 28, 2014, through the date of this decision." *Id.* at 39.

· **DISCUSSION**

Plaintiff raises four allegations of error on appeal: (1) that the ALJ improperly accounted for Plaintiff's moderate difficulties in concentrating, persisting, or maintaining pace in the RFC finding; (2) that the ALJ improperly accounted for Plaintiff's moderate difficulties in interacting with others in the RFC finding; (3) that the ALJ failed to properly weigh and evaluate the medical opinion evidence; and (4) that the ALJ improperly considered the vocational expert's ("VE") testimony. The Court agrees with Plaintiff's first argument and part of her fourth argument, but the remaining arguments lack merit. Each alleged error is addressed below.

### A. The ALJ Erred At Step Four Of The Sequential Evaluation.

Several of Plaintiff's allegations relate to the ALJ's RFC determination. In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must

discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

1. The ALJ's RFC Determination Improperly Accounted For Plaintiff's Moderate Difficulties With Concentrating, Persisting, Or Maintaining Pace.

Plaintiff first contends that the ALJ's RFC assessment failed to adequately account for her moderate difficulties in concentrating, persisting, or maintaining pace in violation of *Mascio*. ECF No. 19-1 at 11–14. Specifically, Plaintiff argues that the ALJ did not include a limitation to account for Plaintiff's moderate difficulties by merely stating that Plaintiff could perform "simple, routine, repetitive tasks" and that the ALJ failed to explain why including a limitation was unnecessary. *Id.* at 11–12 (record citation and internal quotation marks omitted). The Court agrees.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00. "Each [L]isting therein, consists of: (1) a brief statement describing its subject disorder; (2)

9

'paragraph A criteria,' which consists of a set of medical findings; and (3) 'paragraph B criteria,' which consists of a set of impairment-related functional limitations." *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053, at *2 (D.Md. Nov. 6, 2015) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)). If the paragraph A and paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment. *Id.*

Paragraph B provides the functional criteria assessed by the ALJ and consists of four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b). The ALJ employs a "special technique" to rate the degree of a claimant's functional limitations in these areas. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ's evaluation must determine "the extent to which [the claimant's] impairment(s) interferes with [the] ability to function independently, appropriately, effectively, and on a sustained basis" and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ uses a five-point scale to rate a claimant's degree of limitation in these areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b).

The functional area of concentrate, persist, or maintain pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(3). According to the regulations, examples of the ability to focus attention and stay on task include:

> Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent

10

> pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.*

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. Specifically, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task, stating that the latter ability concerns the broad functional area of concentration, persistence, or pace. *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*; *see also Carr v. Colvin*, No. TMD 15-685, 2016 WL 4662341, at *10 (D.Md. Sept. 7, 2016) (remanding for the ALJ to "determine on a function-by-function basis how Plaintiff's impairments affect his ability to work for a full workday").

Here, the ALJ's RFC assessment did not properly account for Plaintiff's difficulties in concentrating, persisting, or maintaining pace. At step three of the sequential evaluation, the ALJ determined that "[w]ith regard to concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation," and further explained that:

> In her initial Function Report, [Plaintiff] noted she had no problems paying attention or following instructions; in her subsequent Function Report from the next summer she indicated she had limited concentration and had to go over instructions several times.

> Treating psychiatrist Rajenra Lowtan, M.D., noted [Plaintiff] was at times easily distracted, but [Plaintiff]'s other treatment notes show normal concentration. Again giving [Plaintiff] the benefit of the doubt, she has moderate limitation in her concentration, persistence, or pace.

ECF No. 16-3 at 30 (internal record citations omitted).

The ALJ then limited Plaintiff's RFC, in pertinent part, stating that Plaintiff "could perform simple, routine, repetitive tasks with only occasional interaction with co-workers and supervisors and no interaction with the public." *Id.* at 31. The latter portion of this RFC finding imposes a restriction that corresponds with the ALJ's finding of moderate difficulties in social functioning, not concentration, persistence, or pace. *See Henry v. Berryhill*, No. BPG-17-57, 2018 WL 558839, at *3 (D.Md. Jan. 25, 2018). Thus, there is no restriction for the ALJ's findings of moderate difficulties in concentration, persistence, or pace. *See Bey v. Berryhill*, No. CBD-17-2292, 2018 WL 3416944, at *3–4 (D.Md. July 12, 2018) (determining that an RFC which limited the claimant "to simple, routine tasks and occasional contact with supervisors, coworkers, and the public" and "low stress work, defined as occasional decisionmaking and occasional changes in the work setting" failed to account for the claimant's moderate limitations in concentration, persistence, or pace (record citation omitted)); *Flores v. Berryhill*, No. TMD 16-3430, 2018 WL 1326398, at *5 (D.Md. Mar. 15, 2018) (determining that an RFC which limited the claimant to "'simple, routine, and repetitive tasks,' with 'no interaction with the general public unless it is merely superficial' and 'only occasional interaction with co-workers'" failed to account for the claimant's moderate limitations in concentration, persistence, or pace). The ALJ noted Plaintiff's difficulties in this area in her opinion and explicitly acknowledged that Plaintiff has difficulties maintaining concentration, persistence, or pace. ECF No. 16-3 at 30, 32, 33; *see also Martin v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-335, 2015 WL 7295593, at *3 (D.Md. Nov. 18, 2015) (remanding case

after the ALJ discussed evidence pertaining to the claimant's difficulties in concentration, persistence, or pace but then did not offer a restriction corresponding to the limitation nor did the ALJ justify the lack of restriction given).

"As the Fourth Circuit mandates under *Mascio*, 'once an ALJ had made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary.'" *Henry*, 2018 WL 558839, at *3 (citation omitted). "Without providing further analysis of plaintiff's mental limitations, highlighting medical evidence refuting the severity of the limitation, or otherwise discussing why a restriction pertaining to concentration, persistence, or pace is not needed in the case, this court cannot perform an adequate review." *Id.* Because the ALJ neither included a proper limitation in her RFC assessment nor explained why such a limitation was unnecessary in this case, the Court must remand the case to the SSA for further analysis consistent with *Mascio*.

2. The ALJ's RFC Determination Properly Accounted For Plaintiff's Moderate Difficulties In Interacting With Others.

Plaintiff next contends that the ALJ's RFC assessment failed to adequately account for her moderate difficulties in interacting with others. ECF No. 19-1 at 14–18. Specifically, Plaintiff argues that the ALJ failed to explain how the limitation to "occasional interaction with co-workers and supervisors and no interaction with the public" accounts for Plaintiff's ability to respond appropriately or on a sustained basis to others. *Id.* at 14–15, 17–18.

As discussed, at step three of the sequential evaluation, the ALJ determines whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. When considering the mental impairments contained in Listing 12.00, the ALJ assesses the four broad functional areas set forth in Paragraph B and employs the "special

13

technique" to rate the degree of the claimant's limitations in these areas. 20 C.F.R. pt. 404, subpt.

P, app. 1, 12.00(A)(2)(b); 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

The functional area of interacting with others "refers to the abilities to relate to and work

with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(2).

According to the regulations, examples of the ability to relate to and work with others include:

> [C]ooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

*Id.*

Here, the ALJ's RFC assessment properly accounted for Plaintiff's difficulties in

interacting with others and the ALJ sufficiently explained how the limitation accounted for

Plaintiff's difficulties. At step three of the sequential evaluation, the ALJ determined that [i]n

interacting with others, [Plaintiff] has a moderate limitation," and further explained that:

> In her initial Function Report, [Plaintiff] noted she was able to interact with others over the phone and on the computer, and that she regularly attended church. In her more recent Function Report, [Plaintiff] noted that her mental illness limits her social skills for customer service jobs. During the hearing, [Plaintiff] testified that she experienced mood swings and had no social life. However, she was cooperative and appropriate during her two consultative examinations with Dr. Harris. The record as a whole shows [Plaintiff] has moderate limitation in her ability to interact with others.

ECF No. 16-3 at 30 (internal record citations omitted). The ALJ then limited Plaintiff's RFC, in

pertinent part, stating that Plaintiff was capable of "occasional interaction with co-workers and

supervisors and no interaction with the public." *Id.* at 31.

As previously stated, this Court has held that restrictions on interactions with groups of individuals, such as co-workers, supervisors, and members of the public, "correspond[ ] with . . . [a] finding of moderate difficulties in social functioning." *Henry*, 2018 WL 558839, at *3. Thus, the ALJ's RFC determination properly addressed Plaintiff's difficulties in this area. Furthermore, contrary to Plaintiff's allegation that the ALJ failed to explain how this limitation accounts for her difficulties, the ALJ engaged in a thorough discussion of the evidence at step four and highlighted evidence in the record to support the limitation. ECF No. 16-3 at 32–34. Specifically, the ALJ acknowledged Plaintiff's testimony that she felt "secluded at home" and "ha[d] no social life" and discussed that Plaintiff initially "reported being very involved in her church and having good friends" but later reported that she had "stopped going to church . . . and had little friendship support." *Id.* at 32–33. The ALJ also noted that Plaintiff was "cooperative" during both of her consultative examinations. *Id.* at 33. Finally, the ALJ explained that the limitation "further considers [Plaintiff]'s [generalized anxiety disorder] and depressive disorders and any effects from her history of opioid abuse. These limitations take into account her subjective reports of difficulty being around others but also consider her cooperative, appropriate behavior with her evaluators and treatment providers." *Id.* at 34.

Plaintiff's remaining arguments concerning the ALJ's limitation for interacting with others similarly fail. First, Plaintiff asserts that the ALJ's limitation is "contested" by Plaintiff's treating psychiatrist, Dr. Lowtan, who opined that Plaintiff had a marked limitation in her ability to interact with others and could not maintain socially appropriate behavior or work with others, and that the ALJ "ignored" Dr. Lowtan's findings as to her difficulties. ECF No. 19-1 at 15–16. However, as discussed more fully below, the ALJ properly assigned Dr. Lowtan's opinion "little weight" and was not required to adopt his findings. *See Geisler v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-

2857, 2015 WL 4485459, at *2 (D.Md. July 21, 2015) (explaining that an ALJ is not required to adopt all of a physician's findings, even when the ALJ assigns the physician's opinion significant or moderate weight).

Plaintiff then contends that the ALJ's limitation was "inherently flawed" because "a claimant who is limited to occasional interaction with others . . . would be unable to sustain the mental ability to interact with others on a regular and continuing basis." ECF No. 19-1 at 17–18. Plaintiff appears to understand SSR 96-8p to mean that a claimant must be able to perform specific tasks continuously for a full work day, but this interpretation is misplaced. Limitations to "frequent" or "occasional" performance of work activities are expressly contemplated by the regulations, 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983), and the ALJ did not err in including such a limitation in the RFC. Thus, for the reasons stated, the ALJ's RFC assessment properly accounted for Plaintiff's moderate limitation in interacting with others and the ALJ sufficiently explained how the limitation accounted for Plaintiff's difficulties. Accordingly, remand on this issue is unwarranted.

3. The ALJ Properly Evaluated The Medical Opinion Evidence And Sufficiently Explained Her Decision As To Weight Given.

Plaintiff's argument relating to the ALJ's evaluation of the medical opinion evidence is twofold. Plaintiff contends: (1) that the ALJ erred in assigning only "partial weight" and "little weight" to all of the medical opinions in the record; and (2) that the ALJ erred in assigning the opinion of Plaintiff's treating psychiatrist "little weight." ECF No. 19-1 at 18–25.

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, [the SSA] will give the medical source's medical opinion more weight than [it] would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating source's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

Plaintiff first takes issue with the ALJ's assignment of only partial and little weight to each of the medical opinions in the record and argues that "it is unclear wh[ich] medical opinions were rejected and wh[ich] opinions were persuasive in determining [Plaintiff]'s physical and mental

RFC." ECF No. 19-1 at 19–21.[3] It is clear from the regulations that "[t]he RFC determination is an issue ultimately reserved for the ALJ" and that "[a]n ALJ must base the RFC analysis on all of the relevant medical and other evidence and must assign weight to any relevant medical opinions." *Denise H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1756, 2019 WL 2076242, at *2 (D.Md. May 10, 2019) (internal citations and quotation marks omitted). Here, the ALJ properly considered each medical opinion in the record and cited substantial evidence to support her findings of partial or little weight in accordance with the regulations. ECF No. 16-3 at 34–35. The ALJ was not required to "parrot a single medical opinion, or even assign great weight to any opinions, in determining [the] RFC assessment" and, thus, she did not err in declining to do so. *Denise H.*, 2019 WL 2076242, at *2 (quoting *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13-2086, 2014 WL 1669105, at *2 (D.Md. Apr. 24, 2014)) (internal quotation marks omitted).

Plaintiff next argues that the ALJ erred in weighing the opinion of Plaintiff's treating psychiatrist, Dr. Lowtan. ECF No. 19-1 at 23–25. After reviewing Dr. Lowtan's findings, the ALJ assigned "little weight" to his opinion, articulating her reasoning as follows:

> The opinion of treating psychiatrist Dr. Lowtan is also given little weight. He opined in September 2017 that [Plaintiff] had a marked limitation in [her] ability to understand, remember, and apply information, interact with others, and concentration, persistence, or pace. He noted [Plaintiff] had a moderate limitation in her ability to work with simple instructions and that she could only pay attention for less than 15 minutes. He further noted [Plaintiff]

---

[3] In making this argument, Plaintiff also contends that the ALJ failed to define "partial weight" or "little weight" and that this necessitates remand pursuant to *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016) and *Rapczynski v. Colvin*, No. WGC-15-2639, 2016 WL 4537765 (D.Md. Aug. 31, 2016). However, remand in *Monroe* and *Rapczynski* was predicated on the ALJ's failure to explain the reasons for the various weights given, rather than the failure to define the terms used. *Monroe*, 826 F.3d at 191 (ordering remand where the ALJ engaged in conclusory analysis of medical opinions and failed to provide specific explanation of the reasons for assigning various weights); *Rapczynski*, 2016 WL 4537765, at *12–13 (acknowledging that the ALJ failed to define some classifications of weight but ultimately ordering remand because the ALJ failed to weigh several of the medical opinions in the record and engaged in conclusory analysis as to other opinions).

could not work with others, could not maintain socially appropriate behavior, and could not respond to changes. He additionally noted [Plaintiff] would be off-task more than 25 percent a day and would be absent more than four days a month. This opinion is inconsistent with [Plaintiff]'s lack of therapy for much of the record, as well as the observations on different occasions by Dr. Harris[, the consultative examiner,] showing good attention, memory, and concentration and appropriate behavior. Such extreme limitations are also inconsistent with [Plaintiff]'s ability to raise her children, including a very small daughter. The opinions are further inconsistent with the records from Ann[e] Arundel [County Health Department], noting [Plaintiff] consistently reported doing well. These opinions are inconsistent with the record as a whole and given little weight.

ECF No. 16-3 at 34 (internal record citations omitted).

The Court disagrees with Plaintiff and finds that the ALJ properly evaluated and assigned Dr. Lowtan's opinion little weight because it was inconsistent with other objective medical evidence in the record. *See id.* The ALJ explained that Dr. Lowtan's opinion was not supported by objective medical evidence and cited to substantial evidence in the record to support that finding. Specifically, the ALJ noted that Plaintiff received treatment and medication for generalized anxiety disorder and opioid dependence from the Anne Arundel County Health Department and "consistently reported feeling stable and doing well" through April 2015. *Id.* at 32. The ALJ also observed that Plaintiff was diagnosed with major depressive disorder in November 2015, but that her treatment providers at Anne Arundel County Health Department noted she was making "remarkable progress" and that she "was a willing participant in treatment and was compliant with her recommendations." *Id.* at 32–33. The ALJ highlighted that in April 2016, Plaintiff denied having any anxiety to her primary care provider. *Id.* at 33. The ALJ also discussed findings from Plaintiff's consultative examinations with Dr. Harris and noted that Plaintiff was reported to be "cooperative and alert" and "was able to follow simple commands and had intact memory and concentration." *Id.* The ALJ noted that Plaintiff had not gone to therapy

as recommended, yet she remained "cooperative and well kempt without any hallucinations or delusions" and had "intact memory, attention, and concentration." *Id.*[4] Such evidence contradicts Dr. Lowtan's opinion that Plaintiff has marked limitations in her abilities to understand, remember, or apply information, interact with others, and concentrate, persist, or maintain pace and cannot maintain socially appropriate behavior or work with others. Consequently, the Court finds that the reasons for assigning Dr. Lowtan's opinion little weight were articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

### B. The ALJ Erred At Step Five Of The Sequential Evaluation.

Lastly, Plaintiff disagrees with the ALJ's consideration of the vocational expert's ("VE") opinion, arguing that the ALJ erred when she (1) posed a hypothetical to the VE which failed to properly account for Plaintiff's mental limitations; and (2) accepted a response from the VE which was inconsistent with the Dictionary of Occupational Titles ("DOT") and failed to resolve that conflict. ECF No. 19-1 at 25–29.

1. The ALJ Posed A Hypothetical To The VE Which Failed To Properly Account For Plaintiff's Mental Limitations.

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§

---

[4] With regard to Dr. Harris's consultative examination findings, Plaintiff argues that the ALJ erred in giving these findings more deference than Dr. Lowtan's findings. ECF No. 19-1 at 24. However, as discussed, the ALJ evaluated both opinions in accordance with the regulations and supported her finding that Dr. Harris's opinion garnered more weight with substantial evidence. ECF No. 16-3 at 34–35. This Court "may not reweigh this evidence . . . or supplant the ALJ's judgment with [its] own." *Sharp v. Colvin*, 660 F.App'x 251, 259 (4th Cir. 2016) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam)).

404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). "[A] hypothetical question is unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F.App'x 359, 364 (4th Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis omitted) (quoting *Johnson*, 434 F.3d at 659).

Plaintiff first contends that the ALJ's hypothetical to the VE was erroneous because it was based on the RFC determination, which failed to properly account for Plaintiff's mental difficulties. ECF No. 19-1 at 26–27. During the hearing, the ALJ posed the following hypothetical to the VE:

> Assume a hypothetical individual of [Plaintiff]'s age and education and with the past job that you described. Further assume that this individual is limited to sedentary work. The individual can occasionally climb ramps [and] stairs, but never ladders, ropes or scaffolds. Can occasionally balance [and] stoop, but never kneel, crouch or crawl. Can perform simple, routine, repetitive tasks with only occasional interaction with coworkers and supervisors and no interaction with the public.

ECF No. 16-3 at 67.

It is clear from the hearing testimony that all of the limitations in Plaintiff's RFC were included in the ALJ's hypothetical to the VE. *Id.* at 31, 67. However, as previously determined *supra*, the ALJ's RFC determination did not properly account for Plaintiff's moderate difficulties in the area of concentrating, persisting, or maintaining pace. Thus, "[t]he ALJ's error with respect to [Plaintiff]'s RFC . . . translated into [a] deficient hypothetical[ ]" to the VE. *Morgan v. Barnhart*, 142 F.App'x 716, 721 (4th Cir. 2005). Accordingly, remand is warranted for the ALJ to reassess

Plaintiff's RFC and, if required, consider additional evidence to determine whether relevant jobs exist for Plaintiff in the national economy.

> 2. The ALJ's Failure to Resolve The Conflict Between The VE's Testimony And The DOT Was Harmless Error.

Plaintiff next argues that the ALJ committed error when she accepted a response to the hypothetical question from the VE which was inconsistent with the DOT and failed to resolve the conflict. ECF No. 19-1 at 27–29. Specifically, Plaintiff takes issue with the ALJ's finding that she could perform work as a surveillance monitor (DOT #379.367-010) because the position requirements conflict with the ALJ's RFC limitations for Plaintiff's moderate difficulties in concentrating, persisting, or maintaining pace and interacting with others. *Id.*

Social Security Ruling 00-4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the DOT and VE testimony to determine whether a Social Security claimant can find work suited to her RFC. SSR 00-4p explains that its purpose is to require the ALJ (not the VE) to "[i]dentify and obtain a reasonable explanation" for conflicts between the VE's testimony and the DOT, and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). The Ruling then proceeds to require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT;" and second, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. Notably, this second requirement is so independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR 00-4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable," *id.* at *2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at *4.

Here, the VE testified that Plaintiff was capable of performing the position of surveillance monitor. ECF No. 16-3 at 38, 68. According to the DOT, this position has a reasoning level of three and requires the individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" as well as "[d]eal with problems involving several concrete variables in or from standardized situations." DICOT 379.367-010, 1991 WL 673244 (Jan. 1, 2016). The position also requires frequent talking and interaction with other individuals. *Id.* As Plaintiff correctly points out, there is a clear conflict between the surveillance monitor job requirements and the ALJ's RFC limitations for Plaintiff's moderate difficulties in concentrating, persisting, and maintaining pace and interacting with others. Rather than explaining how an individual who is limited to simple tasks, occasional interaction with co-workers and supervisors, and no interaction with the public could perform a position which requires carrying out detailed instructions and frequent talking and interaction, the ALJ merely concluded that the VE's testimony was consistent with the information in the DOT. ECF No. 16-3 at 38. Although the ALJ failed to resolve this conflict, the Court notes that the ALJ found, based on the VE's testimony, that there were other jobs Plaintiff could perform, including table worker, dowel inspector, and nut sorter. *Id.* Therefore, even though the ALJ did not resolve the conflict regarding the surveillance monitor occupation, there remains substantial evidence to support the ALJ's conclusion that Plaintiff is capable of performing other jobs that exist in significant numbers. Accordingly, the error by the ALJ was harmless.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from February 28, 2014 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN

PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 19) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 16 July 2019

A. David Copperthite
United States Magistrate Judge